**BBC CHARTERING & LOGISTIC GMBH & CO. K.G., W. Bockstiegel GmbH & Co. K.G., Reederei KG MS Asian Voyager, in personam, and the M/V BBC PLATA, in rem, Plaintiffs,**

v.

**SIEMENS WIND POWER A/S and Siemens Power Generation, Inc. f/k/a Siemens Westinghouse Power Generation, Defendants.**

**Civil Action No. H–07–169.**

United States District Court,
S.D. Texas,
Houston Division.

April 22, 2008.

Jason P. Waguespack, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, James Terry Bailey, Galloway, Johnson, Tompkins, Burr & Smith, Michael J. Wray, Legge, Farrow, Kimmitt, McGrath & Brown, LLP, Houston, TX, for Plaintiff BBC Chartering & Logistic GmbH & Co. K.G.

William A. Durham, Eastham, Watson, Dale & Forney, LLP, Houston, TX, for Plaintiffs W. Bockstiegel GmbH & Co. K.G., Reederi KG MS "Asian Voyager," in personam, and M/V BBC PLATA, in rem.

Iliaura Hands, Miller & Williamson, LLC, New Orleans, LA, for Defendants Siemens Power Generation, Inc. f/k/a Siemens Westinghouse Power Generation and Siemens Wind Power A/S.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court are Plaintiffs BBC Chartering & Logistic GmbH & Co. K.G., W. Bockstiegel GmbH & Co. K.G., Reederei KG MS Asian Voyager, and the M/V BBC PLATA's (collectively, "Plaintiffs") Motion for Partial Summary Judgment and Defendants Siemens Wind Power A/S and Siemens Power Generation, Inc.'s (collectively, "Defendants") Motion to Dismiss or Alternatively to Stay. Having considered the motions, submissions, and applicable law, the Court determines Plaintiffs' motion should be denied as moot and Defendants' motion should be granted.

## BACKGROUND

On October 27, 2005, Plaintiff BBC Chartering & Logistic GmbH & Co. K.G. ("BBC"), a German corporation with its principal place of business in Leer, Germany, contracted with Defendant Siemens Wind Power A/S ("SWP"), a Danish corporation with its principal place of business in Brande, Denmark, to transport 130 wind turbines from Aalborg, Denmark to Corpus Christi, Texas.[1] Pursuant to their contract, BBC agreed to ship SWP's turbines over the course of fourteen separate ocean voyages. All contract negotiations between SWP and BBC occurred in Denmark and Germany, and the contract, or liner booking note, incorporated BBC's bills of lading and the following jurisdiction clause ("jurisdiction clause"):

All claims against the Carrier arising from or in connection with this Bill of Lading or the underlying contract of carriage shall be brought in the court of

1. SWP manufactures wind turbines that supply electrical power to consumers. Prior to contracting with BBC, SWP sold 130 wind turbines to Defendant Siemens Power Generation, Inc. ("SPG"), a Delaware corporation with its principal place of business in Orlando, Florida. Because SWP agreed to ship the turbines to SPG, it contracted with BBC for ocean transportation. Under the terms of the contract of sale between SWP and SPG, risk of loss did not pass from SWP to SPG until the cargo reached Corpus Christi.

relevant jurisdiction in Hamburg, Germany with German law to apply. Nothing in the clause shall be construed to prevent the Carrier from filing suit in any jurisdiction for claims arising under or in connection with this Bill of Lading or the underlying contract of carriage.

On January 8, 2007, BBC loaded and secured twenty-six wind turbine hubs aboard Plaintiff M/V BBC PLATA ("PLATA"), an ocean going vessel, in Aarhus, Denmark. On January 12, 2007, the PLATA sought shelter in Esberg, Denmark after lashings on the PLATA came loose during heavy weather on the North Sea, permitting the cargo to move about the PLATA's hold unsecured. Ultimately, nine wind turbine hubs were damaged.[2] After the damaged cargo was discharged in Denmark and placed in storage for future inspection, the PLATA arrived in Corpus Christi, Texas on March 4, 2007, where it discharged the undamaged cargo.

On January 16, 2007, Plaintiffs filed suit against Defendants in this Court, seeking a determination under the Declaratory Judgment Act that they are not liable for damage to the hubs or, in the alternative, that their liability is limited to $500 per hub under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. App. § 1300 *et seq.* On January 19, 2007, SWP filed a parallel suit against Plaintiffs in Hamburg, Germany pursuant to the jurisdiction clause, seeking compensation for the damaged cargo.[3] Defendants timely filed the instant motion to dismiss on February 28, 2008.[4] Defendants argue dismissal is proper under the doctrine of forum non conveniens because Houston, Texas ("Houston") is an inconvenient forum, and a more convenient forum lies in Hamburg, Germany ("Hamburg").[5] Plaintiffs aver Houston is a proper forum because the jurisdiction clause provides Plaintiffs may file suit against Defendants in any jurisdiction. Thus, the Court must determine the effect of the jurisdiction clause and wheth-

2. Pursuant to the parties' agreement, BBC was responsible for the loading, lashing, and securing of the vessel's cargo.

3. Although SPG is a named party in this suit, it is not a party in the Hamburg litigation.

4. The Court notes Plaintiffs argue the Court should not entertain Defendants' motion to dismiss because the Court previously denied Defendants' motion to dismiss on December 28, 2007. However, in light of further briefing by the parties and the recent ruling in *BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, Civ. A. No. H–06–1169, 2008 WL 155048 (S.D.Tex. Jan. 15, 2008), the Court determines the doctrine of forum non conveniens warrants dismissal. As the Court's prior ruling was an interlocutory order, and not a final judgment, the Court is free to reconsider and reverse its prior decision. *See Louisiana v. Guidry*, 489 F.3d 692, 697–98, 698 n. 14 (5th Cir.2007) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990) (explaining that a "trial court is free to reconsider and reverse its decision [on an interlocutory order] for any reason it deems suffi-

cient, even in the absence of new evidence or an intervening change in or clarification of the substantive law"), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir.1994)).

5. Alternatively, Defendants argue dismissal is proper based upon the legal standards and policies underlying the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Specifically, Defendants argue the Court should exercise its discretion to dismiss Plaintiffs' declaratory judgment action because the factors courts consider when determining whether to dismiss a declaratory judgment action, as articulated in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir.1994), warrant dismissal. Because there is considerable overlap between a forum non conveniens analysis and the *Trejo* factors, and because the Court determines Plaintiffs' declaratory judgment action should be dismissed pursuant to the doctrine of forum non conveniens, the Court declines to reach Defendants' alternative argument.

er the doctrine of forum non conveniens warrants dismissal of Plaintiffs' declaratory judgment action.

## LAW & ANALYSIS

### I. JURISDICTION CLAUSE

Before examining Defendants' forum non conveniens argument, the Court first addresses Plaintiffs' argument that Defendants are contractually bound to a Houston forum by the jurisdiction clause contained within the bills of lading.[6] Plaintiffs aver the Court should deny Defendants' motion to dismiss because the jurisdiction clause is analogous to a forum selection clause that entitles BBC to file suit *in any jurisdiction* of its choosing and precludes Defendants from arguing the forum is inconvenient. Thus, the Court must determine two issues: (1) whether Plaintiffs properly filed suit in this Court seeking a declaratory judgment that they have no liability to Defendants; and if the answer to the first question is "yes," (2) whether the jurisdiction clause is a forum selection clause that precludes Defendants from challenging Plaintiffs' choice of forum on inconvenience grounds.

#### A. WHETHER PLAINTIFFS PROPERLY FILED SUIT IN HOUSTON

■ Plaintiffs argue they properly filed a declaratory judgment suit in Houston

pursuant to the jurisdiction clause contained within the booking note and bills of lading.[7] The jurisdiction clause's first sentence provides:

> All claims against the Carrier arising from or in connection with this Bill of Lading or the underlying contract of carriage shall be brought in the court of relevant jurisdiction in Hamburg, Germany with German law to apply.

Neither party disputes, and the Court agrees, the jurisdiction clause's first sentence is mandatory because it binds parties suing BBC to one exclusive forum: Hamburg, Germany. *See Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 560 (N.D.Tex. 2003) ("Where the agreement contains clear language showing jurisdiction is appropriate only in a designated forum, the clause is mandatory."). However, the last sentence provides:

> Nothing in the clause shall be construed to prevent the Carrier from filing suit in any jurisdiction for claims arising under or in connection with this Bill of Lading or the underlying contract of carriage.

The Court finds the last sentence is permissive because it authorizes suits brought by BBC in Hamburg, but it does not prohibit BBC from litigating elsewhere. *See id.* Put differently, although the jurisdiction clause confines *suits filed against*

6. The jurisdiction clause at issue provides:
All claims against the Carrier arising from or in connection with this Bill of Lading or the underlying contract of carriage shall be brought in the court of relevant jurisdiction in Hamburg, Germany with German law to apply. Nothing in the clause shall be construed to prevent the Carrier from filing suit in any jurisdiction for claims arising under or in connection with this Bill of Lading or the underlying contract of carriage.

7. Defendants argue Plaintiffs' declaratory judgment action is not properly before this Court because it is not a "claim" on Plaintiffs'

own behalf but rather it is a defensive action arising from SWP's claims for cargo damage brought against Plaintiffs in Hamburg. According to Defendants, no "claims" exist in favor of Plaintiffs in this case, and jurisdiction is therefore improper in any court other than one located in Hamburg. The Court is not persuaded that Plaintiffs' declaratory judgment action is not a "claim." A "claim for declaratory relief is just as much a 'claim' as is a claim for damages, and its defensive nature is of no import." *BBC Chartering & Logistic GmbH & Co. v. Suzlon Wind Energy Corp.*, Civ. A. No. H–05–04128, 2006 WL 1007524, at *2 (S.D.Tex. Apr. 18, 2006).

*BBC* to Hamburg (first sentence), *suits filed by BBC* are not similarly confined to Hamburg (second sentence). *See generally Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127–28 (5th Cir.1994) (discussing the distinctions between mandatory and permissive forum selection clauses).

Therefore, BBC may, but is not bound to, file a declaratory judgment action against Defendants in Hamburg. Moreover, given the permissive nature of the jurisdiction clause's last sentence, Plaintiffs were also free to file a declaratory judgment action in Houston. *See Suzlon Wind Energy Corp.,* 2006 WL 1007524, at *2. Thus, the Court finds Plaintiffs' declaratory judgment suit in Houston is proper.

### B. WHETHER THE JURISDICTION CLAUSE IS A FORUM SELECTION CLAUSE

Despite the Court's determination that the jurisdiction clause allows Plaintiffs to file suit in Houston, the Court does not agree the last sentence of the jurisdiction clause entitles BBC to file suit in any forum of its choosing without due regard to the convenience and cost to the other parties. In other words, Plaintiffs may not file suit in an arbitrary jurisdiction and then claim they are immune to Defendants' forum objections because Defendants are bound by a "forum selection clause." For the reasons explained in detail below, the Court rejects Plaintiffs' argument that Defendants are contractually precluded from objecting to Plaintiffs' choice of forum.

First, a forum selection clause, as indicated by its very name, is a contractual clause that *selects* a forum. By definition, a forum selection clause is "[a] contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them." BLACK'S LAW DICTIONARY 681 (8th ed. 2004) (defining "forum selection clause"). Here, the last sentence of BBC's jurisdiction clause—which Plaintiffs aver

constitutes a forum selection clause—fails to establish the place, country, state, or type of court where it may bring a lawsuit. The jurisdiction clause's last sentence does not select a forum at all. In effect, Plaintiffs advocate a universal forum selection clause under which Plaintiffs contend they may hale a contracting party into court in *any jurisdiction,* and the other party is bound to abide by Plaintiffs' choice. Because the jurisdiction clause's last sentence fails to select the place, country, state, or type of court where BBC may bring suit, the Court is unconvinced Defendants are contractually precluded from objecting to Plaintiffs' choice of forum.

Second, the Court does not agree with Plaintiffs' argument that Defendants are bound to litigate in whatever forum Plaintiffs choose because the primary purpose of a forum selection is to eliminate uncertainty. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (recognizing that "much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained *in any jurisdiction* ") (emphasis added). Enforcing valid forum selection clauses increases predictability and certainty, notions essential to the fluidity of our national and international markets and their underlying business transactions. *See id.* at 13–14, 92 S.Ct. 1907 (explaining that the elimination of uncertainty "by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting"). Plaintiffs' position that the last sentence of the jurisdiction clause obligates contracting parties to defend against suits in any jurisdiction Plaintiffs choose, without being subject to inconvenient forum objections, encourages uncertainty. Under Plaintiffs' interpretation, contracting parties must defend suits in a forum that may be arbitrary or unacceptable even though they

did not agree in advance to such a forum. Plaintiffs' position vitiates the long-standing principles underlying forum selection clauses.[8] *See id.*

Last, Plaintiffs' interpretation does not comport with the plain meaning of the jurisdiction clause as a whole. Although the jurisdiction clause makes it clear BBC is not bound to file suit in Hamburg, it does not provide that contracting parties shall be bound to litigate disputes in the forum BBC selects. Rather, the Court finds that the jurisdiction clause's last sentence merely provides that BBC may file suit in any jurisdiction subject, of course, to appropriate forum challenges by the opposing party.

In sum, the last sentence of Plaintiffs' jurisdiction clause does not select a forum at all, and thus, it is not a forum selection clause. Plaintiffs' interpretation of the jurisdiction clause contradicts its plain meaning and encourages uncertainty. Although the Court finds Plaintiffs' declaratory judgment action in Houston is proper pursuant to the jurisdiction clause's permissive language, the Court also finds Defendants are not contractually precluded from challenging Plaintiffs' choice of forum because the jurisdiction clause's last sentence does not bind contracting parties to litigate disputes in any forum of BBC's choosing.

## II. FORUM NON CONVENIENS

Having determined Plaintiffs' jurisdiction clause does not contractually preclude Defendants from challenging Plaintiffs' choice of forum, the Court must determine whether to dismiss Plaintiffs' suit under the doctrine of forum non conveniens. According to Defendants, Houston is a particularly inconvenient forum, and a more convenient, available, and adequate forum lies in Hamburg. Plaintiffs respond that Houston has an important connection to this suit because BBC issued the bills of lading in Houston, BBC and SPG have offices in Houston, and the PLATA discharged the undamaged cargo in Corpus Christi, Texas, a city within this judicial district. Accordingly, the Court must determine whether the doctrine of forum non conveniens warrants dismissal.

Pursuant to the doctrine of forum non conveniens, a federal district court may decline to exercise jurisdiction where it appears that the convenience of the parties and the court and the interests of justice indicate the action should be tried in another forum. *Turan v. Universal Plan Invs. Ltd.*, 248 F.3d 1139, 2001 WL 85902, at *4 (5th Cir.2001); *Raytheon Eng'rs & Constructors, Inc. v. H L H & Assos. Inc.*, 142 F.3d 1279, 1998 WL 224531, at *2 (5th Cir.1998) (explaining "a district court may, in the exercise of its sound discretion, dismiss a case" for forum non conveniens).

---

**8.** Plaintiffs rely on *Suzlon Wind Energy Corp.* for the proposition that Defendants may not challenge Plaintiffs' selected forum because the jurisdiction clause constitutes a forum selection clause, which essentially prevents Defendants from objecting to a forum's convenience. Like this Court, the *Suzlon Wind Energy Corp.* court found it was proper for BBC to file a declaratory judgment action in Houston pursuant to the jurisdiction clause's last sentence. *See Suzlon Wind Energy Corp.*, 2006 WL 1007524, at *2. The *Suzlon Wind Energy Corp.* court, however, was not faced with determining whether a defendant could challenge Plaintiffs' choice of forum under the doctrine of forum non conveniens. Notably, in considering whether a discretionary dismissal under the Declaratory Judgment Act was appropriate, the *Suzlon Wind Energy Corp.* court did not deny the defendants' motion to dismiss because the jurisdiction clause precluded the defendants from objecting. *See id.* at *4–5. Rather, the *Suzlon Wind Energy Corp.* court denied dismissal on factual grounds that are distinguishable from the facts in this case. *See id.* at *5.

In a two-step analysis, a court first determines whether an available and adequate foreign forum exists. *Turan,* 2001 WL 85902, at *4; *CTF Cent. Corp. v. Inter–Continental Hotels Corp.,* 71 F.3d 877, 1995 WL 725353, at *6 (5th Cir.1995). If the court determines an adequate and available forum exists, the court considers private interest factors articulated by the United States Supreme Court in *Gulf Oil* and weighs those factors against the deference given to the plaintiff's initial choice of forum. *Turan,* 2001 WL 85902, at *4; *CTF Cent. Corp.,* 1995 WL 725353, at *7 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *see also Raytheon Eng'rs & Constructors, Inc.,* 1998 WL 224531, at *2 (" '[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum,' especially when a United States plaintiff has chosen the home forum.") (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). The court must bear in mind that the ultimate inquiry is where trial "will best serve the convenience of the parties and the interests of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

If an adequate and available forum exists, the court considers private and public interest factors. *DTEX, LLC v. BBVA Bancomer, S.A.,* 508 F.3d 785, 794 (5th Cir.2007). The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Turan,* 2001 WL 85902, at *4 (citing *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1153–54 (5th Cir.1987), *vacated on other*

*grounds sub nom. Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989)); *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839. The doctrine also addresses whether the actions brought are vexatious or oppressive, or whether the interests of justice require that the trial be had in a more appropriate forum. *In re Air Crash,* 821 F.2d at 1158.

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having a trial in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 342 (5th Cir.1999); *In re Air Crash,* 821 F.2d at 1162–63. When considering the public interest factors, the key question a court must answer is "whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it." *Seguros Comercial Americas S.A. De C.V. v. Am. President Lines, Ltd.,* 933 F.Supp. 1301, 1313 (S.D.Tex.1996) (*"Seguros II "*).

No single private or public interest factor is given conclusive weight; instead, the central focus of the inquiry is convenience. *Turan,* 2001 WL 85902, at *4 (citing *Dickson Marine Inc.,* 179 F.3d at 342). Unless the balance of the factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839; *CTF Cent. Corp.,* 1995 WL 725353, at *7 (explaining that the factors must be viewed with an eye towards the policy that the plaintiff's initial choice of forum is usually to be respected); *cf. Turan,* 2001

WL 85902, at *4 (explaining that a citizen's choice should not be given dispositive weight). Defendants bear the burden of proof on all elements of the forum non conveniens analysis. *In re Air Crash*, 821 F.2d at 1164.

## A. AVAILABLE AND ADEQUATE FOREIGN FORUM

■ Regarding the first step in the forum non conveniens analysis, whether an available and adequate forum exists, "a foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction." *DTEX, LLC*, 508 F.3d at 796; *In re Air Crash*, 821 F.2d at 1164. Although the parties may not enjoy all the benefits of an American court, a foreign forum is adequate so long as the parties are not deprived of remedies or treated unfairly. *DTEX, LLC*, 508 F.3d at 796. "The substantive law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *Id.* (quoting *Tjontveit v. Den Norske Bank ASA*, 997 F.Supp. 799, 805 (S.D.Tex.1998)).

■ The Court finds that Hamburg is an available and adequate forum for several reasons. As for availability, the Hamburg court previously issued an order determining that it has jurisdiction over the parallel lawsuit Defendant SWP filed against Plaintiffs in Hamburg on January 19, 2007. As for adequacy, Plaintiffs do not, and cannot, claim Hamburg is an inad-

equate forum because BBC inserted a jurisdiction clause in its bills of lading requiring contracting parties to file claims for cargo damage against BBC in Hamburg with German law to apply. Therefore, in light of BBC's contractual decision to confine all litigation against it to Hamburg, Plaintiffs have effectively conceded Hamburg is an adequate forum. Although the Hamburg court is currently considering which law—COGSA or German Hague–Visby—applies to the dispute, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight." *See Piper Aircraft Co.*, 454 U.S. at 247, 102 S.Ct. 252. Put differently, dismissal should not be precluded simply because the applicable law in Hamburg might be less favorable to Plaintiffs. *See id.*; *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir.2003) (explaining that " 'adequacy' does not require that the alternative forum provide the same relief as an American court"). Regardless, Plaintiffs do not contend the Hamburg court would treat them unfairly.[9]

Because the parties and the case can come within the Hamburg court's jurisdiction, and the parties will not be deprived of all remedies or treated unfairly, the Court finds Hamburg is an available and adequate forum. *See DTEX, LLC*, 508 F.3d at 796; *In re Air Crash*, 821 F.2d at 1164; *Siemens Wind Power A/S*, 2008 WL 155048, at *3.

## B. PRIVATE INTEREST FACTORS

■ Having determined Hamburg is an available and adequate foreign forum, the

---

9. As previously noted, Defendant SPG is not a party to the Hamburg litigation. However, Plaintiffs fail to assert they are procedurally barred from joining SPG in the Hamburg litigation. More importantly, SWP represented to this Court that it would amend its pleadings in the German action to name SPG as a party so that all parties can be before the

Hamburg court. As such, the fact that Defendant SPG is not a party in the Hamburg suit does not render Hamburg an inadequate forum. *See BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, Civ. A. No. H–06–1169, 2008 WL 155048, at *3 (S.D.Tex. Jan. 15, 2008) (Harmon, J.).

Court next considers the private interest factors. *See DTEX, LLC,* 508 F.3d at 798. Accordingly, the Court addresses each factor individually.

### 1. *Relative Ease of Access to Sources of Proof*

It is undisputed that SWP and BBC negotiated the liner booking note in Germany and Denmark; the cargo was loaded aboard the PLATA in Aarhus, Denmark; the cargo was damaged aboard the PLATA somewhere in the North Sea; the damaged cargo was unloaded and inspected in Esberg, Denmark; and the PLATA docked in Corpus Christi, Texas. Notably, none of these events took place in Houston. Moreover, Defendants have supplied the Court with a list of nineteen critical witnesses, none of whom reside in Houston or the United States. Of the nineteen critical witnesses, seven reside in Germany, and Defendants aver the twelve remaining witnesses who reside in Denmark and Belgium are within a three-hour drive of Hamburg. Furthermore, all four Plaintiffs are foreign parties.[10] BBC, Bockstiegel, and Asian Voyager are German corporations, two of which have their principal places of business in Hamburg. Likewise, Defendants have no meaningful Houston connection: Defendant SWP is located in Denmark, and Defendant SPG is a Delaware corporation with its principal place of business in Orlando, Florida. Defendants also point out relevant documents are located in Denmark and Germany because the liner booking note was negotiated in those countries.

Plaintiffs argue the Court should not dismiss this case because Houston has "a very real and important connection" to the cargo. In support of their position, Plaintiffs point to the following connections: (1) the bills of lading were issued in Houston; (2) BBC has an office in Houston; (3) SPG has an office in Houston; (4) the PLATA discharged the cargo in this "district;" and (5) BBC handled arrangements for the PLATA in this "district." Addressing Plaintiffs' fourth and fifth arguments first, it is undisputed that the PLATA discharged its cargo in Corpus Christi, not Houston. Although Corpus Christi is in the Southern District of Texas, Corpus Christi is in the Corpus Christi Division—not the Houston Division—of the Southern District of Texas. Thus, the Court finds Plaintiffs' arguments that the cargo and the PLATA have a Houston connection because they were in this judicial "district" tenuous.

Turning to Plaintiffs' other arguments, it is unclear how Houston is a more convenient forum for Plaintiffs than Hamburg when their principal places of business are in Germany, and they are already engaged in parallel litigation there. Although the bills of lading may have been issued in Houston, neither party disputes the validity of the bills of lading. Rather, the central focus of this dispute is liability for the damaged cargo, and it is undisputed the cargo damage did not occur in Houston and was never scheduled for delivery in Houston. Moreover, although Plaintiffs aver "*possible* witnesses and documents also exist in the U.S.," Plaintiffs have not identified any key witnesses or documents in the United States or Houston.

---

**10.** Plaintiff W. Bockstiegel GmbH & Co. K.G. ("Bockstiegel"), a German corporation with its principal place of business in Hamburg, Germany, is engaged in the business of operating vessels for the carriage of goods by sea. Plaintiff Reederei KG MS Asian Voyager ("Asian Voyager"), a foreign corporation with its principal place of business in Hamburg, Germany, is also engaged in the business of operating vessels for the carriage of goods by sea. Although named as plaintiffs to this declaratory judgment action in the complaint, it is not clear what their role is in this dispute.

Plaintiffs argue modern technology will alleviate any inconvenience from litigating in a Houston forum. According to Plaintiffs, documents may be transmitted by e-mail, and witnesses may be deposed via teleconferencing. Although advances in technology have helped facilitate international litigation, the Court cannot disregard the fact that all the critical witnesses and documents relevant to this case are remotely located across the Atlantic Ocean. Even if the nineteen foreign witnesses could be deposed via teleconferencing, Plaintiffs fail to address the cost and need for translators. Moreover, because most of the documents are located in Denmark and Germany, "obtaining these documents would be burdensome, time-consuming, and costly in this forum." *Id.* at 799 (discussing documents located in Mexico).

The Court recognizes that most of the pertinent events leading to this litigation occurred in Denmark, not Germany or Houston. Nevertheless, because Denmark borders Germany, and because none of the witnesses or documents are in the United States, the Court finds the parties may more easily access the sources of proof from Hamburg rather than Houston. As such, the first private interest factor, relative ease of access to sources of proof, strongly favors dismissal. *See id.* at 798.

2. *Witnesses*

The second private interest factor examines the availability of compulsory process for securing the attendance of unwilling witnesses and the cost of securing the appearance of willing witnesses. *See id.* at 799–800. This Court cannot compel the attendance of any unwilling nonparty witness who is in Belgium, Denmark, or Germany because the witnesses are outside the Court's subpoena power. *See id.* at

799. However, both parties concede that the Hamburg court similarly has no subpoena power over the witnesses from Denmark or Belgium. Plaintiffs argue the testimony of unwilling witnesses can be obtained in Houston through letters rogatory pursuant to the Hague Convention. Although this is true, letters rogatory—if answered—"require substantial deposition testimony. This process is time consuming and, if the parties fail to cooperate, ineffective." *See Seguros II,* 933 F.Supp. at 1312. Moreover, a Hamburg court may compel the attendance of unwilling nonparty German witnesses and obtain the testimony of unwilling witnesses through letters rogatory just as easily as this Court.

Because neither this Court nor the Hamburg court has subpoena power to compel nonparty foreign witnesses to attend trial, and letters rogatory may be issued pursuant to the Hague Convention in either forum, the Court finds the inability to compel the attendance of unwilling witnesses neither favors nor weighs against dismissal. *See Siemens Wind Power A/S,* 2008 WL 155048, at *4.

As for the cost of securing the appearance of willing witnesses, the fact that all nineteen witnesses in this case are from Belgium, Denmark, and Germany favors dismissal.[11] Defendants estimate trial in Houston will cost approximately $3,500 per witness in transportation, lodging, and meal expenses. Transporting these witnesses to Hamburg rather than Houston would be far less financially burdensome to both parties. Even if the Belgian, Danish, and German witnesses were willing to appear in Houston, the fact that the witnesses are in different locations adds to the cost of securing their attendance. *See DTEX, LLC,* 508 F.3d at 800 (citing *Segu-*

---

11. As noted before, Plaintiffs have not identified a single witness residing in Texas or the United States.

ros *Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.*, 910 F.Supp. 1235, 1247 (S.D.Tex.1995) ("*Seguros I* ")).

Likewise, even though Plaintiffs argue the cost of securing witnesses for trial in Houston can be reduced by offering deposition testimony in lieu of live testimony, conducting a substantial portion of a trial on deposition testimony "precludes the trier of fact from the important function of evaluating the credibility of witnesses." *Seguros II*, 933 F.Supp. at 1312. Because all the aforementioned problems can be avoided or mitigated by litigating this case in Hamburg, this factor favors dismissal.

### 3. *Possibility of Viewing the Premises*

The third private interest factor, the ability to view the premises, can only weigh in favor of dismissal as the PLATA unloaded the damaged wind turbine hubs in Denmark. *See DTEX, LLC*, 508 F.3d at 800. In the event the trier of fact determines that examining the damaged hubs could provide evidence relating to Plaintiffs' alleged negligence in failing to properly lash and secure Defendants' cargo, litigation in Hamburg is much closer to Denmark and would therefore provide a more convenient access to a view of the damaged cargo. *See Seguros II*, 933 F.Supp. at 1312–13. However, because this factor seems unlikely to play an important role, it is given little weight. *See DTEX, LLC*, 508 F.3d at 800.

### 4. *Other Practical Problems*

Defendants argue trial in Houston will be difficult, time consuming, and expensive. Specifically, Defendants note many of the witnesses do not speak English and will wish to testify in their native tongue, which will require a court interpreter and increase trial time and the cost of a Houston forum. Plaintiffs respond that Houston is a convenient forum because deposition testimony may be introduced in lieu of live testimony. As the Court previously

explained, whether the trial is by jury or by bench, "conducting a substantial portion of a trial on deposition testimony precludes the trier of fact from its most important role: evaluating the credibility of witnesses." *Torreblanca de Aguilar v. Boeing Co.*, 806 F.Supp. 139, 144 (E.D.Tex. 1992); *Perez & Compania (Cataluna), S.A. v. M/V Mexico I*, 826 F.2d 1449, 1453 (5th Cir.1987) ("[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition testimony is to create a condition not satisfactory to litigants."). Thus, the last private interest factor favors dismissal.

### 5. *Plaintiff's Choice of Forum*

Finally, the Court notes the strong presumption in favor of a plaintiff's choice of forum. *See DTEX, LLC*, 508 F.3d at 795 (citing *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839). A plaintiff's choice of forum, however, is not dispositive. *Id.* at 795 (citing *Piper Aircraft Co.*, 454 U.S. at 255–56, 102 S.Ct. 252). In the instant case, the Court affords Plaintiffs' choice of forum little consideration for three reasons. First, Plaintiffs are not American citizens, and therefore, the Court declines to consume its time and judicial resources in resolving a dispute involving foreign plaintiffs when an available and adequate forum lies in Hamburg. *See Piper Aircraft Co.*, 454 U.S. at 256, 102 S.Ct. 252 (explaining that "a foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum"). Second, "BBC is in the awkward position of arguing against the convenience of a forum that it chose for claims against it arising under the Liner Booking Note and the bills of lading." *Siemens Wind Power A/S*, 2008 WL 155048, at *5. Third, Plaintiffs are already engaged in parallel litigation in Hamburg, and this Court sees no reason to engage in duplici-

tous litigation. *See In re Air Crash*, 821 F.2d at 1158 (noting a court may dismiss a case under the doctrine of forum non conveniens when the interests of justice require that trial be had in a more appropriate forum).

After considering the private interest factors and Plaintiffs' choice of forum, the Court determines Defendants have met their burden to show that the private interest factors favoring dismissal of this case outweigh Plaintiffs' choice of forum. *See In re Air Crash*, 821 F.2d at 1164. Because the private interest factors favor dismissal, this case has only tenuous connections to Houston, the parties are engaged in parallel litigation in Hamburg, and Plaintiffs are foreign parties, the Court finds trial in Hamburg "will best serve the convenience of the parties and the ends of justice." *See Koster*, 330 U.S. at 527, 67 S.Ct. 828.

### C. PUBLIC INTEREST FACTORS

■ If the private interest factors favor dismissal, a court need not consider the public interest factors. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir.1993) (citing *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 376 (5th Cir.1992)); *In re Air Crash*, 821 F.2d at 1165 (mandating consideration of public interest factors *if* private interests do not favor dismissal). Even though the private interest factors in this case warrant dismissal, the Court will consider the public interest factors. *See Dickson Marine*, 179 F.3d at 342 (listing public interest factors). "The central question a court must answer when considering the public interest factors is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it." *Seguros II*, 933 F.Supp. at 1313.

### 1. Court Congestion

■ The first public interest factor, the administrative difficulties flowing from court congestion, is neutral. Neither party has raised concerns about court congestion in Houston or Hamburg.

### 2. Local Interest

The second public interest factor, the interest in resolving local controversies locally, favors dismissal. This case involves German plaintiffs seeking to limit their liability for cargo damage occurring in Denmark. The facts of this case have no meaningful connection to Houston: the parties negotiated the liner booking note in Germany and Denmark; the cargo was loaded aboard the PLATA in Aarhus, Denmark; the cargo was damaged aboard the PLATA somewhere in the North Sea; and the damaged cargo was unloaded and inspected in Esberg, Denmark. Because Plaintiffs are German parties, and all the relevant events occurred in Europe, a German court has a greater interest than an American court in this controversy. *See DTEX, LLC*, 508 F.3d at 802.

### 3. Forum that is Familiar with the Law

Plaintiffs argue Defendants seek dismissal on forum non conveniens grounds in an attempt to avoid the application of COGSA. Defendants respond the Hamburg court is currently considering which law—COGSA or German Hague–Visby—applies to the dispute already filed there. Neither party disputes, and this Court is confident, that a German court is equally capable of interpreting contracts of carriage and applying COGSA. As Plaintiffs noted, "whichever law governs, the amount of the limitation is determined under both regimes by the application of a simple mathematical formula." Because either court is capable of deciding which law ap-

plies, this factor neither warrants nor favors dismissal.

### 4. *Conflict of Law*

As noted above, this Court is fully confident a German court is capable of deciding which law to apply to Plaintiffs' declaratory judgment action. Because the Hamburg court has not yet decided whether it will apply COGSA or German Hague–Visby to Defendants' parallel suit, neither party points to a conflict of law. Thus, although this factor does not favor dismissal, it does not weigh against it.

However, even if this case presented a potential conflict of laws, this case simply has no general nexus with Houston sufficient to justify the forum's commitment of judicial time and resources to it. *See Seguros II*, 933 F.Supp. at 1313. The parties are foreign; the contracts for carriage were negotiated in Denmark and Germany; the witnesses are Belgian, Danish, and German, and none are located in the United States; and the damage to the cargo occurred while the PLATA was in the North Sea. Moreover, this Court's docket has many cases that have a far greater nexus to Texas and to the United States than this dispute. *See id.* at 1314. Because "conservation of judicial resources is an extremely important objective," and the Plaintiffs are foreign corporations, the Court finds it is not in the public interest to burden this docket and the litigants with a case that has only a limited connection to the local community. *See id.* ("United States citizens should not be

forced to wait in the corridors of our courthouses while foreign causes of action are tried."). Because a case's nexus with the forum is the most critical factor, even if a conflict of law existed, the Court cannot overlook the lack of a meaningful connection to Houston.[12] *See id.* at 1313.

In conclusion, having weighed both the private and the public interest factors, the Court finds Defendants have met their burden to establish the majority of factors favor dismissing this case on the basis of forum non conveniens. *See In re Air Crash*, 821 F.2d at 1164. For all the foregoing reasons, the Court, in its discretion, hereby

ORDERS that Defendants Siemens Wind Power A/S and Siemens Power Generation, Inc. f/k/a Siemens Westinghouse Power Generation's Motion to Dismiss or Alternatively Stay is GRANTED. To the extent Defendants' motion seeks discretionary dismissal, the motion is GRANTED. The Court further

ORDERS that this case is DISMISSED subject to the following conditions:

1. The Court grants this dismissal subject to a return jurisdiction clause.[13]

2. Within ninety (90) days of the date of this order, Plaintiffs shall file a lawsuit in the appropriate German court;

3. Defendants shall timely submit to the jurisdiction of that court;

---

**12.** The last public interest factor, the unfairness of burdening citizens in an unrelated forum with jury duty, is inapplicable because this case will proceed as a bench trial. Thus, the Court need not consider this factor. *See Seguros II*, 933 F.Supp. at 1315.

**13.** *See In re Air Crash*, 821 F.2d at 1164 (requiring district courts to "ensure that a plaintiff can reinstate his suit in the alterna-

tive forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum"); *Vasquez*, 325 F.3d at 675 ("The 'failure to include a return jurisdiction clause in [a forum non conveniens] dismissal constitutes a per se abuse of discretion.'") (quoting *Robinson v. TCI/US West Commc'ns, Inc.*, 117 F.3d 900, 907–08 (5th Cir.1997)).

4. Defendants will waive any statute of limitations defenses that could be raised in the German court;

5. Defendants shall make available in the German court proceedings all relevant documents and witnesses within their control; and

6. Defendants shall make available for use in the German court proceeding any discovery materials produced in this action.

The Court further

ORDERS that Plaintiffs BBC Chartering & Logistic GmbH & Co. K.G., W. Bockstiegel GmbH & Co. K.G., Reederei KG MS Asian Voyager, and the M/V BBC PLATA's Motion for Partial Summary Judgment is DENIED AS MOOT. The Court further

ORDERS that this case will be ADMINISTRATIVELY CLOSED. This Court, however, will retain jurisdiction in the event Plaintiffs, through no fault of their own, are unable to maintain an action in a German court, or Defendants do not comply with the aforementioned conditions.